Jeremy Grant RICKERT, Respondent,

v.

STATE of Minnesota, Appellant.

No. A08–2269.

Supreme Court of Minnesota.

March 23, 2011.

David W. Merchant, Chief Appellate Public Defender, Melissa Sheridan, Assistant State Public Defender, Eagan, MN, for respondent.

Lori Swanson, Attorney General, St. Paul, MN; and Patrick J. Ciliberto, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, MN, for appellant.

## OPINION

DIETZEN, Justice.

In August 2006 respondent Jeremy Grant Rickert pleaded guilty to first-degree criminal sexual conduct for multiple acts that occurred on or about 2003 through 2006. The district court accepted Rickert's guilty plea and imposed the presumptive 144–month sentence and the 10–year conditional release mandated by Minn.Stat. § 609.3455, subd. 6 (2010). Rickert did not file a direct appeal. Subsequently, Rickert filed a petition for postconviction relief arguing that the 10–year conditional release term violated the rule announced in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The postconviction court denied Rickert's petition on the ground that it was time-barred under Minn.Stat. § 590.01, subd. 4(a) (2010), and upheld the 10–year conditional release term. The court of appeals reversed the sentence on the ground that it violated *Blakely* and remanded the case for additional fact-finding. We granted review. Because we conclude that the petition satisfied an exception to the time-bar under Minn.Stat. § 590.01, subd. 4(b) (2010), and that there was no violation of the rule announced in *Blakely v. Washington*, we reverse the decision of the court of appeals.

In June 2006 Rickert was charged in Scott County District Court with three counts of first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(a) (2010), and one count of second-degree criminal sexual conduct in violation of Minn.Stat. § 609.343, subd. 1(a) (2010). The complaint alleged, among other things, that through his relationship with a college friend, Rickert gained access to the college friend's stepson, T.J.P., and that Rickert began sexually assaulting T.J.P. in 2003. In mid-April 2006, the college friend discovered Rickert sexually assaulting T.J.P. at the friend's home.

On August 16, 2006, Rickert pleaded guilty to a charge of first-degree criminal sexual conduct that "[o]n or about 2003 through 2006," he intentionally engaged in sexual penetration with T.J.P. The State dismissed the remaining charges. As part of the factual basis for his guilty plea, Rickert admitted that he engaged in sexual penetration with T.J.P. "on a number of occasions, between the time periods of 2003 and 2006." Rickert also acknowledged that he was subject to 10 years of conditional release and asked the court to follow the guilty plea petition. The district court accepted Rickert's guilty plea, entered judgment of conviction on first-degree criminal sexual conduct, and sentenced him to 144 months in prison. The court also imposed the 10–year conditional release term mandated by section 609.3455, subdivision 6, for crimes committed on or after August 1, 2005. Rickert did not file a direct appeal.

In April 2008, the State Public Defender's Office (SPDO) requested a transcript of the plea hearing, but the SPDO did not receive the transcript until August 14, 2008, which was four days before the postconviction statute of limitations expired under section 590.01, subdivision 4(a). On August 20, 2008, Rickert filed a motion for a two-month extension to file a petition for postconviction relief. Rickert argued that the extension should be granted in the

interests of justice under section 590.01, subdivision 4(b)(5), or alternatively that the two-year time bar was unconstitutional. Before the State had an opportunity to respond, the district court granted the motion. Subsequently, the State filed a memorandum arguing that the petition was untimely and that the subdivision 4(b)(5) exception did not apply.

Rickert then filed a postconviction petition arguing that the 10–year conditional release term of his sentence violated the rule announced in *Blakely v. Washington.* After considering the parties' arguments, the postconviction court denied Rickert's petition as untimely under section 590.01, subdivision 4. Additionally, the court concluded that the conditional release term is part of the statutorily mandated sentence and does not require additional fact-finding, and therefore the imposition of the 10–year conditional release term did not violate *Blakely.*

The court of appeals reversed, concluding that the imposition of the 10–year conditional release term without Rickert's admission of criminal sexual conduct after August 1, 2005, violated *Blakely. Rickert v. State,* No. A08–2269, 2009 WL 4910026, at *3–4 (Minn.App. Dec. 22, 2009). Accordingly, the court of appeals remanded to the postconviction court for additional fact-finding regarding the sentencing issue. *Id.* at *4. The court did not address the timeliness of Rickert's petition. *Id.* at *2–3.

The State petitioned for review of two issues. First, did the court of appeals err when it failed to determine that Rickert's postconviction petition was timely before it considered the merits of the petition? Second, does the Minnesota Constitution guarantee a defendant the right to one review of his conviction? We granted the State's petition for review.

On appeal, we must consider (1) whether Rickert's petition for postconviction relief is time-barred, (2) whether Rickert's sentence violates the rule announced in *Blakely v. Washington,* and (3) whether the statute of limitations in section 590.01, subdivision 4, is unconstitutional.

I.

We first address whether Rickert's petition for postconviction relief is time-barred. The State argues that Rickert's petition for postconviction relief is time-barred under Minn.Stat. § 590.01, subd. 4(a), and that Rickert failed to raise any of the exceptions to the time-bar set forth in Minn.Stat. § 590.01, subd. 4(b).

When reviewing the decision of the postconviction court, we review questions of law de novo. *Arredondo v. State,* 754 N.W.2d 566, 570 (Minn.2008). Our review of factual findings is limited to determining whether there is sufficient evidence in the record to support the findings of the postconviction court. *Leake v. State,* 737 N.W.2d 531, 535 (Minn.2007).

Minnesota Statutes § 590.01, subd. 1 (2010), provides that when direct appellate relief is not available, a person convicted of a crime who claims that the requirements of the statute are met "may commence a proceeding to secure relief by filing a petition in the district court" for postconviction relief. *Id.* A petition for postconviction relief is subject to a two-year statute of limitations. *Id.,* subd. 4(a). Specifically, "[n]o petition for postconviction relief may be filed more than two years after the later of: (1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate court's disposition of petitioner's direct appeal." *Id.* As a result, a petition for postconviction relief filed after the two-year statute of limitations runs is generally time-barred. *Stew-*

*art v. State,* 764 N.W.2d 32, 34 (Minn. 2009).

Rickert pleaded guilty to first-degree criminal sexual conduct on August 16, 2006, and judgment of conviction and sentence were entered the same day. Pursuant to subdivision 4(a), the two-year time limitation for Rickert to file a petition for postconviction relief expired on August 18, 2008.[1] Rickert did not file his petition until October 15, 2008, and therefore, unless Rickert asserts and establishes an exception to the statute of limitations under subdivision 4(b), his petition is time-barred. *See Stewart v. State,* 764 N.W.2d 32, 34 (Minn.2009).

The procedural facts of this case are unusual. Both parties urge the court to address the constitutional issue, but for different reasons. The State argues that the constitutional issue is squarely before us because Rickert's petition was untimely and none of the subdivision 4(b) exceptions apply. Rickert asks the court to address the merits of his claim that he has a constitutional right to one substantive appeal of his conviction. But Rickert's position on the timeliness of the petition and the interests-of-justice exception under subdivision 4(b)(5) is vague and equivocal. Specifically, in the postconviction court, Rickert expressly asserted the interests-of-justice exception in subdivision 4 to obtain an extension from the court to allow a late-filed petition. Thus, the interests-of-justice exception was asserted before the postconviction court. On appeal, Rickert ambiguously states that the postconviction court "may" have correctly ruled that the petition was untimely "despite" the court's extension of time pursuant to subdivision 4(b)(5). Rickert does not admit that the petition is untimely or that none of the subdivision 4(b) exceptions are applicable.

█ We conclude that the question of whether the petition is untimely and whether Rickert's late-filed petition satisfies the interests-of-justice exception under subdivision 4(b)(5) is squarely presented. Specifically, the State has requested that we determine that the petition is untimely and that none of the subdivision 4(b) exceptions are applicable. Generally, we will not address a constitutional issue if there is another basis upon which the case can be decided. *State v. Bourke,* 718 N.W.2d 922, 926 (Minn.2006) (quoting *Erlandson v. Kiffmeyer,* 659 N.W.2d 724, 732 n. 7 (Minn. 2003)); *see also In re Senty–Haugen,* 583 N.W.2d 266, 269 n. 3 (Minn.1998) ("It is well-settled law that the courts should not reach constitutional issues if matters can be resolved otherwise."). Here, the procedural facts before the court squarely present the question of whether Rickert's time-barred petition qualifies under the interests-of-justice exception in subdivision 4(b)(5).[2]

1. The two-year statute of limitations began to run on August 16, 2006, the date on which judgment of conviction and sentence were entered. Under the time computation principles in section 645.15, when the time for performing an act is fixed by law, the time "shall be computed so as to exclude the first and include the last day of the prescribed or fixed period or duration of time." Minn.Stat. § 645.15 (2010); *see also State v. Wertheimer,* 781 N.W.2d 158, 161–62 (Minn.2010) (explaining that Minn.Stat. § 645.15 applies to filing a cause of action before the statute of limitations expires). Therefore, in computing the two-year period, we exclude August 16, 2006 (the first day) and include August 16, 2008 (the last day). August 16, 2008 was a Saturday, however, and according to section 645.15, "[w]hen the last day of the period falls on Saturday, Sunday, or a legal holiday, that day shall be omitted from the computation." Therefore, the statute of limitations in Minn.Stat. § 590.01, subd. 4(a), expired on Monday, August 18, 2008.

2. The concurrence asserts that it is improper for us to address the timeliness issue raised by the State because Rickert did not effectively

Subdivision 4(b) provides that even though the two-year time-bar has expired, a postconviction court "may hear a petition for postconviction relief" if one of the five listed exceptions is satisfied. We read subdivision 4(b) to require two things before a petition that is otherwise time-barred under subdivision 4(a) may be heard and considered by the court. First, the petition must invoke an exception. In *Roby v. State*, 787 N.W.2d 186 (Minn. 2010), we recently addressed the pleading requirements to invoke an exception under subdivision 4(b) to the two-year time-bar. The postconviction court determined that Roby had failed to invoke any of the subdivision 4(b) exceptions. *Id.* at 188. On appeal, we concluded that a petition need not "include specific citation to a subdivision 4(b) exception to invoke it." *Id.* at 191. Rather, the postconviction court should look at the "statement of facts and the grounds upon which the petition is based," "waiv[e] any irregularities or defects in form," and "liberally constru[e]" the petition to determine whether an exception has been invoked. *Id.* (citing Minn.Stat. §§ 590.02, subd. 1(1), 590.03 (2010)).

■ Consistent with *Roby*, we examine the documents Rickert submitted to the postconviction court in order to assess whether Rickert asserted an exception to the time bar. The pleadings before the postconviction court included not only Rickert's petition, but also the underlying motion that provided the legal basis for

the filing of the petition. Specifically, Rickert's motion for extension and memorandum initiated the postconviction proceedings. Notably, Rickert's pleadings asserted the "interest of justice" exception under subdivision 4(b) as the ground for an extension to allow a late-filed petition. The State responded, arguing that the two-year limitation period bars consideration of this petition, and that the exception under subdivision 4(b) was not applicable. Consequently, we conclude that the motion and memorandum were part of the petition, and that the petition invoked subdivision 4(b)(5).

■■ Second, Rickert must satisfy the exception in subdivision 4(b)(5) that the petition is "not frivolous, and is in the interests of justice." Minn.Stat. § 590.01, subd. 4(b)(5). The meaning of this exception is discussed in *Gassler v. State*, 787 N.W.2d 575 (Minn.2010). We observed that "[a] petition is frivolous if it is perfectly apparent, without argument, that the petition is without merit." *Id.* at 586. Put differently, petitioner must show that there is a good-faith basis for the claim made in the petition, not that he necessarily would succeed on the merits.

■ In his petition for postconviction relief, Rickert claimed that the district court violated *Blakely* by imposing a 10–year conditional release term. Citing *State v. DeRosier*, 719 N.W.2d 900 (Minn. 2006), Rickert argued that ambiguities in

respond to the State's claim that Rickert failed to raise any of the exceptions to the time-bar set forth in Minn.Stat. § 590.01, subd. 4(b). To support its assertion the concurrence cites *Barnes v. State*, 768 N.W.2d 359, 363 (Minn.2009); *Brocks v. State*, 753 N.W.2d 672, 675 n. 3 (Minn.2008); and *McKenzie v. State*, 583 N.W.2d 744, 746 n. 1 (Minn.1998). But none of these cases involved an issue that was fully briefed and argued by the party raising the issue, but not

by the opposing party. Here, the State argued that the petition was untimely, and that Rickert failed to raise any of the exceptions to the time-bar set forth in Minn.Stat. § 590.01, subd. 4(b). Although Rickert does little more than reference the timeliness issue in the argument portion of his brief, he does not concede the issue. Because the timeliness issue is squarely presented by one party, and not conceded by the other party, our consideration of the issue is not improper.

his factual basis regarding the date of the offense required the district court to make an implicit finding of fact not established by his guilty plea. While we conclude *infra* that Rickert's reliance on *DeRosier* is misplaced, Rickert's petition was not frivolous because Rickert based his petition on a good faith reliance on our decision in *DeRosier*.

*Gassler* also identifies a nonexclusive list of factors for determining whether the petition is "in the interests of justice," including the degree of fault assigned to the party asserting the interests-of-justice claim. 787 N.W.2d at 586–87. Rickert requested the services of the SPDO well within the original statute of limitations. Rickert's postconviction counsel did not receive the transcript for the guilty plea and sentencing hearing until August 14, 2008, which was only two business days before the statute of limitations expired. Because counsel would have had two days to write, serve, and file the petition, Rickert filed the motion for extension of time to file the petition, notifying both the postconviction court and the State of the reasons for the delay. Rickert complied with the extension deadline, filing the petition within two months of the expiration of the original statute of limitations. We conclude that Rickert established that it is in the interests of justice for the postconviction court to consider the petition.

Finally, under section 590.01, subdivision 4(c), a petition for postconviction relief invoking an exception under subdivision 4(b) must be filed within two years of the date the interests-of-justice claim "arises." Here, the earliest an interests-of-justice claim based on the transcript delivery could arise is April 2008, when Rickert ordered the transcript, and the latest the claim could arise is August 14, 2008, when the court reporter delivered the transcript. Rickert filed the motion to extend on Au-

gust 20, 2008, and filed his petition for postconviction relief on October 15, 2008. Applying either date, the petition was filed within two years of the date the interests-of-justice claim arose.

■ In summary, we conclude that Rickert's motion and memorandum for extension of time are part of his postconviction petition, and that Rickert's petition invoked and satisfied the interests-of-justice exception in section 590.01, subdivision 4(b)(5), within the two-year time limitation in subdivision 4(c). Therefore, the postconviction court was able to hear and consider the petition on the merits.

## II.

■ We next address whether the district court violated the rule announced in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), by imposing the 10–year conditional release based on Rickert's statements during his guilty plea hearing. The State argues that *Blakely* does not apply, and that the 10–year conditional release term was properly imposed. Rickert argues that his plea-hearing statement alone is insufficient to establish that any conduct occurred after August 1, 2005, the date on which the presumptive sentence changed.

■ In *Blakely v. Washington*, the Supreme Court explained that any fact (other than a prior conviction) necessary to support a sentence exceeding the maximum authorized by the facts established by a guilty plea or guilty verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. *Id.* at 301–04, 124 S.Ct. 2531. It is well established that a "defendant, by his plea of guilty, in effect judicially admit[s] the allegations contained in the complaint." *State v. Trott*, 338 N.W.2d 248, 252 (Minn.1983); *see also Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927)

(explaining that "[a] plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence."). Minnesota Statutes § 609.3455, subd. 6, does not require any additional fact-finding before the sentencing court imposes the mandatory 10–year conditional release term for first-degree criminal sexual conduct committed on or after August 1, 2005. *See* Act of June 2, 2005, ch. 136, art 2, § 21, 2005 Minn. Laws 901, 932 (providing that the 10–year conditional release term applies to crimes committed on or after August 1, 2005).

■■■■ Here, Rickert pleaded guilty to a charge of first-degree criminal sexual conduct that "[o]n or about 2003 through 2006," he intentionally engaged in sexual penetration with T.J.P. The word "through" is commonly understood to mean "from the beginning to the end." *The American Heritage Dictionary of the English Language* 1870 (3d ed.1992). Thus, by his guilty plea, Rickert judicially admitted that he sexually penetrated T.J.P. in 2006. Because section 609.3455, subdivision 6, does not require any additional fact-finding before the sentencing court imposes the mandatory 10–year conditional release term for first-degree criminal sexual conduct committed on or after August 1, 2005, the rule announced in *Blakely* does not apply to the facts of Rickert's case. *See State v. Jones*, 659 N.W.2d 748, 753 (Minn.2003) (concluding that the 5–year conditional release term required under Minn.Stat. § 609.109, subd. 7 (2000), did not violate *Apprendi* because the conditional release term was authorized on the basis of the jury verdict). We conclude that when Rickert pleaded guilty, he admitted the allegations in the complaint that he sexually penetrated T.J.P. in 2006. Consequently, no additional fact-finding is required to determine that criminal sexual conduct occurred after August 1, 2005, and therefore the 10–year conditional release term automatically applies.[3]

## III.

■■■■ Rickert asserts that the Minnesota Constitution guarantees defendants the

---

**3.** The court of appeals conflated the factual *basis* required for a valid guilty plea and the facts *established* by a guilty plea. The purpose of the factual-basis requirement is "to protect the defendant from the conviction of a greater offense by guilty plea than would have been possible had he exercised his right to trial." *Taylor v. State*, 670 N.W.2d 584, 589 n. 5 (Minn.2003); *see also State v. Theis*, 742 N.W.2d 643, 650 (Minn.2007). The "factual-basis requirement is satisfied if the record contains a showing that there is credible evidence available which would support a jury verdict that defendant is guilty of at least as great a crime as that to which he pled guilty." *State v. Genereux*, 272 N.W.2d 33, 34 (Minn. 1978). On the other hand, the entry of a guilty plea has the legal effect of establishing the facts alleged in the complaint by judicial admission. *See Trott*, 338 N.W.2d at 252.

On appeal, Rickert did not argue that his guilty plea was invalid because it lacked an adequate factual basis. Concluding that Rickert's factual basis did not include an express statement that he sexually penetrated T.J.P. after August 1, 2005, the court of appeals reasoned that the district court must have made "an implied finding that one or more of [Rickert's] acts occurred after [August 1, 2005]." But unlike *State v. DeRosier*, 719 N.W.2d 900 (Minn.2006), in which an ambiguous jury verdict required an implicit finding that one of the acts occurred after the effective date of the sentencing statute, Rickert's guilty plea established by judicial admission that the acts occurred "on or about 2003 through 2006." *See id.* at 902–03. Thus, there was no need for the district court to find that one or more of Rickert's acts occurred after August 1, 2005. While a defect in Rickert's factual basis might affect the validity of his guilty plea, it does not raise a *Blakely* issue. Moreover, the evidence in the record is sufficient to support the conclusion that the factual basis was accurate.

right to one review of their convictions, through either a direct appeal or first review by postconviction proceeding. Based on his assertion, Rickert argues that the statute of limitations in Minn.Stat. § 590.01, subd. 4(a), is unconstitutional when applied to a defendant whose conviction has not been reviewed on direct appeal or first review by postconviction proceeding. Because we conclude that Rickert's petition is not barred by the statute of limitations in section 590.01, subdivision 4(a), we need not address his constitutional claim. *See State v. Bourke*, 718 N.W.2d 922, 926 (Minn.2006) (explaining that we will not address a constitutional issue if there is another basis on which the case can be decided).

In summary, we reverse the court of appeals and reinstate the decision of the district court imposing the 10–year conditional release term.

Reversed.

STRAS, Justice (concurring).

I concur only in the result reached by the court. Unlike the majority, I would not rely on the interests-of-justice exception in Minn.Stat. § 590.01, subd. 4(b) (2010), because Rickert has waived that argument. At every stage of this appeal, Rickert has explicitly disclaimed any reliance on the interests-of-justice exception to the two-year filing deadline for petitions for postconviction relief under subdivision 4(b) of section 590.01. The question actually briefed by the parties and preserved for appeal—whether Rickert has a right to one full substantive review of his conviction under either the United States or Minnesota Constitutions—has been left unanswered by the majority. I would answer that question and hold that Rickert's due process rights under the United States and Minnesota Constitutions are not violated by enforcing the two-year filing

deadline. Accordingly, I would reverse the court of appeals and hold that the district court did not err in denying Rickert's petition for postconviction relief as untimely.

I.

It is our longstanding rule that issues that are not argued or briefed on appeal are deemed waived, "unless prejudicial errors are obvious from the record." *Barnes v. State*, 768 N.W.2d 359, 363 n. 2 (Minn. 2009); *see also Brocks v. State*, 753 N.W.2d 672, 675 n. 3 (Minn.2008) (holding the State waived its untimeliness objection to the appellant's petition for postconviction relief because the State neither briefed nor argued its justification for the objection on appeal); *McKenzie v. State*, 583 N.W.2d 744, 746 n. 1 (Minn.1998) (concluding the appellant waived an issue that he only alluded to, rather than fully argued, in his brief to this court). In both the court of appeals and this court, Rickert elected not to argue that the interests-of-justice exception applies to his untimely petition for postconviction relief. Indeed, Rickert conceded in his brief to the court of appeals that his petition was "arguably untimely," but stated that the lack of timeliness was irrelevant because the two-year filing deadline in Minn.Stat. § 590.01, subd. 4 (2010), violates his constitutional right to one full substantive review of his conviction. Rickert reiterated in his brief to this court that "none of [the subdivision 4(b) exceptions] were raised or considered in Rickert's postconviction proceeding." Finally, Rickert's attorney admitted at oral argument before this court that Rickert did not argue for the application of the interests-of-justice exception because Rickert's ineffective assistance of counsel claim independently warrants review even if the filing deadline in section 590.01 is

constitutional.[1] Under these circumstances, Rickert has waived consideration of the interests-of-justice exception on appeal.

Nonetheless the court insists on answering a question under section 590.01 that the parties do not ask us to address.[2] In doing so, the court makes the following conclusions—without briefing by the parties—in order to apply the interests-of-justice exception to Rickert's untimely petition for postconviction relief: (1) Rickert properly invoked the interests-of-justice exception by referencing it in his motion for an extension of time to file a postconviction petition, even though the exception is not mentioned at all in Rickert's petition; (2) Rickert's petition is not frivolous; and (3) Rickert's petition satisfies a nonexclusive list of factors from *Gassler v. State*, 787 N.W.2d 575 (Minn.2010)—in particular that Rickert was minimally at fault for the delay in filing his postconviction petition. None of these conclusions arise from "prejudicial errors [that] are obvious from the record," *Barnes*, 768 N.W.2d at 363 n. 2, which is the only exception to the waiver rule that we have consistently applied in our case law. In accordance with the court's usual practice, therefore, I would decline to decide the applicability of the interests-of-justice exception in section 590.01, an issue that was neither raised in Rickert's petition for postconviction relief nor in his briefs to the court of appeals or this court.

## II.

I would instead answer the question actually briefed by the parties and preserved for appeal: whether the United States or Minnesota Constitution requires one full substantive review of a criminal conviction, even if review is otherwise barred by a statutory filing deadline or another procedural requirement imposed by statute. The State argues that Rickert's due process rights are adequately protected by the two mechanisms offered in this state for substantive review of Rickert's conviction—direct appeal and postconviction relief—even though Rickert is required to comply with certain procedural requirements for obtaining either type of review. Rickert disagrees, urging us to fashion a new right under the Minnesota Constitution requiring one full substantive review of his criminal conviction regardless of whether he has complied with the procedural requirements imposed by statute. I decline Rickert's invitation to recognize a new right under the Minnesota Constitution, and instead would hold that application of the two-year filing deadline for petitions for postconviction relief in section 590.01 is not an unconstitutional limitation on Rickert's due process rights under ei-

1. However, Rickert explicitly requested in his brief that this court not consider the issue of ineffective assistance of counsel because it was not raised in the State's petition for further review. In its reply brief, the State agreed with Rickert's argument. Accordingly, I would not address the question of whether Rickert is entitled to a review of his conviction based on ineffective assistance of counsel.

2. The majority concludes that Rickert did not waive the application of the interests-of-justice exception of section 590.01 because the State somehow preserved the issue for him.

To be sure, the State did argue that none of the exceptions to the two-year filing deadline apply to Rickert's petition. But it would no doubt surprise the State that its abbreviated argument that Rickert's petition *is* time-barred is now being used by the majority to hold that Rickert's petition *is not* time-barred, even though Rickert fails to make that argument himself. The majority's approach is exactly backwards: an argument waived by one party cannot be revived through an argument by the opposing party urging the opposite result.

ther the United States or Minnesota Constitution.

### A.

After pleading guilty to first-degree criminal sexual conduct in 2006, Rickert had two opportunities to obtain one full substantive review of his conviction. Except for cases involving first-degree murder,[3] every person convicted of a crime has one direct appeal as of right to the Minnesota Court of Appeals. If a person still wishes to obtain further review of a conviction on direct appeal, then a petition for further review can be filed in this court to invoke our discretionary jurisdiction. If a person elects not to file a direct appeal, then a postconviction petition can be filed in the district court no more than two years after "the entry of judgment of conviction or sentence," unless one of five statutory exceptions applies. Minn.Stat. § 590.01, subd. 4(a). "[A] postconviction petitioner is entitled to raise nearly the same breadth of claims that could have been brought in a direct appeal, so long as the postconviction claims are in compliance with the procedural requirements of the Postconviction Remedy Act." *Deegan v. State*, 711 N.W.2d 89, 94 (Minn.2006). A petitioner is entitled to appeal the denial of a postconviction petition so long as the appeal is taken within 60 days after entry of the district court's order denying the postconviction petition. Minn. R.Crim. P. 28.02, subd. 4(3)(c).

Despite the procedural requirements imposed by the Postconviction Remedy Act, our postconviction process is broader than in many other jurisdictions, including federal court, where "the failure to pursue a direct appeal bars all claims that were known and should have been raised on direct appeal, absent cause for failing to raise the issue previously and resulting prejudice." *Deegan*, 711 N.W.2d at 94. In Minnesota, therefore, a criminal defendant can forego direct appeal of a conviction and still obtain one full substantive review of a conviction in the postconviction process.

But to invoke the comprehensive processes for review available in Minnesota, Rickert was required to file either a direct appeal of his conviction within 90 days after entry of final judgment, Minn. R.Crim. P. 28.02, subd. 4(3)(a), or a postconviction petition no later than two years after "the entry of judgment of conviction or sentence" if he did not file a direct appeal, Minn.Stat. § 590.01, subd. 4. Rickert did not avail himself of either opportunity to obtain one full substantive review of his conviction.

### B.

In lieu of following the procedural requirements imposed by statute and court rule, Rickert argues that his conviction must now be reviewed because otherwise he will be deprived of the one full substantive review of his conviction required by the United States and Minnesota Constitutions. The Supreme Court of the United States, however, rejected Rickert's argument under the Due Process Clause of the Fourteenth Amendment as early as 1894:

> An appeal from a judgment of conviction is not a matter of absolute right, independently of constitutional or statutory provisions allowing such appeal. A review by an appellate court of the final judgment in a criminal case, however grave the offence of which the accused is convicted, was not at common law and is

---

**3.** By statute, every person convicted of first-degree murder must appeal directly to this court rather than the Minnesota Court of Appeals. *See* Minn.Stat. §§ 480A.06, subd. 1, 632.14 (2010).

not now a necessary element of due process of law. It is wholly within the discretion of the State to allow or not to allow such a review.

*McKane v. Durston,* 153 U.S. 684, 687, 14 S.Ct. 913, 38 L.Ed. 867 (1894); *see also Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (plurality opinion) ("It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all."); *Spann v. State,* 704 N.W.2d 486, 491 (Minn.2005) (stating that a "convicted defendant does not have a constitutional right to appeal under either the United States Constitution or the Minnesota Constitution"). The Supreme Court has stated in equally clear terms that the Due Process Clause of the Fourteenth Amendment does not require states to adopt a system for postconviction relief either. *Pennsylvania v. Finley,* 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no obligation to provide [postconviction] relief...."); *United States v. MacCollom,* 426 U.S. 317, 323, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976) (plurality opinion) ("The Due Process Clause ... does not establish any right to collaterally attack a final judgment of conviction."). As a result, Rickert urges this court to recognize a novel right under the Minnesota Constitution that is at odds with the Supreme Court's interpretation of the Due Process Clause of the Fourteenth Amendment.

## C.

This court will interpret a provision in the Minnesota Constitution differently from the Supreme Court's interpretation of a similar provision of the United States Constitution in only limited instances. *Kahn v. Griffin,* 701 N.W.2d 815, 824–25 (Minn.2005). A "principled basis" must be identified for the differing interpretation, not simply a desire "to bring about a dif-

ferent result." *Id.* at 824. This court favors uniformity with the Supreme Court's interpretation of the U.S. Constitution because it results in "consistency of practice in state and federal courts." *Id.* In *Kahn,* we articulated the analytical framework for determining whether to follow the interpretation given to the U.S. Constitution in interpreting a parallel provision of the Minnesota Constitution. *Id.* at 824–25.

The inquiry begins with whether the language of the Minnesota Constitution is "identical or substantially similar" to the language in the U.S. Constitution. *Id.* at 828. When the language is different, or if the "state constitutional language guarantees a fundamental right that is not enumerated in the U.S. Constitution," then this court is "most inclined" in those circumstances to depart from Supreme Court precedent. *Id.* If, on the other hand, the language of the two constitutional provisions is identical or substantially similar, then this court will depart from Supreme Court precedent only if (1) "the United States Supreme Court has made a sharp or radical departure from its previous decisions or approach to the law and when we discern no persuasive reason to follow such a departure," (2) "the Supreme Court has retrenched on Bill of Rights issues," or (3) "federal precedent does not adequately protect our citizens' basic rights and liberties." *Id.*

The language of the Due Process Clauses of the United States and Minnesota Constitutions are substantially similar. The U.S. Constitution states that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *see also* U.S. Const. amend. V ("No person shall be ... deprived of life, liberty, or property, without due process of law...."). The Minnesota Constitution

states that "[n]o person shall be held to answer for a criminal offense without due process of law ... nor be deprived of life, liberty or property without due process of law." Minn. Const. art. I, § 7. The only difference between the two is that the Minnesota Constitution clearly and unambiguously requires that due process be accorded to defendants in criminal prosecutions, whereas the Supreme Court has adopted that interpretation in its case law as the proper reading of the Fifth and Fourteenth Amendments to the U.S. Constitution. Despite that minor difference, we have previously stated that the language of the two constitutional provisions is similar, *State v. LeDoux*, 770 N.W.2d 504, 512 (Minn.2009), and that the scope of protection under both is "identical," *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn.1988).

In analyzing the exceptions to the rule that the Minnesota Constitution is generally read in accordance with the Supreme Court's interpretation of identical or substantially similar provisions of the U.S. Constitution, no serious argument can be made that the Supreme Court has made a "sharp or radical departure from its previous decisions" or that it has "retrenched on Bill of Rights issues" in interpreting the Fourteenth Amendment's Due Process Clause. *See Kahn*, 701 N.W.2d at 828. Since 1894, the Supreme Court has repeatedly and consistently held that "[d]ue process does not comprehend the right to appeal" a criminal conviction. *District of Columbia v. Clawans*, 300 U.S. 617, 627,

57 S.Ct. 660, 81 L.Ed. 843 (1937); *accord McKane*, 153 U.S. at 687, 14 S.Ct. 913 ("A review by an appellate court of the final judgment in a criminal case, however grave the offence of which the accused is convicted, was not at common law and is not now a necessary element of due process of law."); *Lindsey v. Normet*, 405 U.S. 56, 77, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972) ("[I]f a full and fair trial on the merits is provided, the Due Process Clause of the Fourteenth Amendment does not require a State to provide appellate review...."). And although the cases are of more recent vintage,[4] the Supreme Court has also unwaveringly held that states do not have an obligation under the Fourteenth Amendment's Due Process Clause to provide postconviction review of criminal convictions. Indeed, the Supreme Court's precedent rejecting a due process right to direct appellate review has even stronger application with respect to postconviction review because the latter involves a collateral attack on a final judgment of conviction and "is even further removed from the criminal trial than is discretionary direct review." *Finley*, 481 U.S. at 556–57, 107 S.Ct. 1990 (1987); *see also Murray v. Giarratano*, 492 U.S. 1, 7, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (confirming that states are not required to provide an avenue for postconviction relief).

The only remaining question is whether the Supreme Court's interpretation of the Due Process Clause of the Fourteenth Amendment "adequately protect[s] our cit-

---

**4.** It is unsurprising that the Supreme Court did not directly address until the 1980s whether the Fourteenth Amendment's Due Process Clause requires states to provide postconviction review because many states, including Minnesota, did not have statutes authorizing postconviction review until well into the twentieth century. *See Deegan*, 711 N.W.2d at 93 (describing Minnesota's enact-

ment of the Postconviction Remedy Act in 1967); *see also* John H. Blume & Emily C. Paavola, *A Reintroduction: Survival Skills for Post–Conviction Practice in South Carolina*, 4 Charleston L.Rev. 223, 225–30 (2010) (stating that the first modern postconviction statute was passed in 1949, with eleven states following between 1951 and 1963).

izens' basic rights and liberties." *See Kahn,* 701 N.W.2d at 828. Although the Supreme Court has resolved the broader questions under the Fourteenth Amendment to the United States Constitution, this case requires us to decide only whether a convicted defendant has an *unlimited* and *absolute* right to one full substantive review under the Minnesota Constitution, not the hypothetical and more difficult question of whether the State could limit substantive review of criminal convictions altogether by providing *no* means of direct appeal or postconviction review. Rickert concedes that he could have directly appealed his criminal conviction of first-degree sexual conduct in 2006 or filed a petition for postconviction review within two years of the entry of the final judgment of conviction in his criminal case. He availed himself of neither option.

Although a limitless right to one substantive review may be desirable to criminal defendants, and might even be attractive as a policy matter, desirability and attractiveness are not the tests for the recognition of a new right under the Minnesota Constitution. *Cf. Deegan,* 711 N.W.2d at 100 (Anderson, G.Barry, J., dissenting) ("[N]either traditions based in statute nor poor policy choices by the legislature are sufficient" to extend the right to counsel under the Minnesota Constitution). Rather, it is our responsibility to apply the law, and a holding that permits an unlimited right to one substantive review of a criminal conviction would not only be at odds with Supreme Court precedent, but it would be inconsistent with the text of the Minnesota Constitution, its history, and our case law.

As relevant here, Article I, Section 7 of the Minnesota Constitution states that "[n]o person shall be held to answer for a criminal offense without due process of law ... nor be deprived of life, liberty or property without due process of law." As traditionally understood, "due process" requires notice and a *meaningful opportunity* to be heard. *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *LeDoux,* 770 N.W.2d at 513. This court has held that, in the context of a criminal prosecution, "[d]ue process requires that every defendant be afforded a meaningful opportunity to present a complete defense," *State v. Richardson,* 670 N.W.2d 267, 277 (Minn.2003) (internal quotation marks omitted), not that a criminal defendant has an unlimited right to present any and all defenses and witnesses on his own behalf, *State v. Quick,* 659 N.W.2d 701, 713–14 (Minn.2003). Rickert cannot cite any precedent, nor am I aware of any, that interprets the words "due process" to require unlimited process for a criminal defendant, either during a criminal prosecution or an appeal. In this case, Rickert received a "meaningful opportunity" to challenge his conviction through either direct appeal or postconviction review, the latter of which was available for two years after the entry of judgment of conviction against him.

Accordingly, whatever the merits of the argument that the Minnesota Constitution bars the suspension or elimination of *all* appellate and postconviction review, a question that need not be decided today, I can find no "principled basis" in the Minnesota Constitution for an unlimited right to one full substantive review of a criminal conviction.

### D.

Our case law, to the extent it is helpful on this question, is not to the contrary. As recently as 2005 this court recognized that a "convicted defendant does not have a constitutional right to appeal under either the United States Constitution or the Minnesota Constitution." *Spann,* 704

N.W.2d at 491. In *Spann*, the defendant agreed to waive the right to appeal his conviction in exchange for a reduced sentence. We held that such an agreement violates due process because the convicted defendant, who had already been convicted and sentenced, cannot agree to a "waiver of the right to appeal" in exchange for a benefit conferred by the State. *See id.* at 493. Although Rickert relies on *Spann* to advance his argument in favor of an unbounded right to one substantive review under the Minnesota Constitution, *Spann* dealt with a defendant who reached an agreement with the State to forego an appeal, not a defendant who failed to appeal or did not follow the proper procedures to submit a postconviction petition. Indeed, we recognized in *Spann* that a waiver through an agreement with the State is "fundamentally different from the defendant's waiver of personal rights or *waiver by default.*" *Id.* (emphasis added).

The strongest support for Rickert's position comes from *Deegan*, 711 N.W.2d at 91, 98, in which we held that a statutory provision permitting the state public defender to decline representation of indigent postconviction petitioners who pled guilty, received the presumptive sentence or less, and did not pursue a direct appeal, violated the right to counsel provision of the Minnesota Constitution. However, *Deegan* involved a right under the Minnesota Constitution—"the assistance of counsel" guarantee in Article I, Section 6—that we have interpreted "independently of the United States Constitution," unlike cases

involving due process. *Id.* at 97. Although it is true that the opinion postulated in dicta that "it may well be that the right to one review—through either direct appeal or postconviction proceeding—is a 'tradition unique to Minnesota'" and thus "arguably ... grounded in the Minnesota Constitution," we expressly deferred a decision on that question "until another day." *Id.* at 95.[5]

But even assuming that the statement in *Deegan* was not dicta and the Minnesota Constitution guarantees one full substantive review of a criminal conviction, there is no language in *Deegan* supporting a limitless and absolute right to one review. The right is still subject to any reasonable procedural requirements enacted by the Legislature and imposed by court rule. Therefore, to the extent a right to one review of a criminal conviction is implicit in Article I, Section 7 of the Minnesota Constitution, it is, at most, a guarantee of a *process to review* criminal convictions, not a sweeping guarantee permitting convicted defendants to seek review any time they wish and regardless of the circumstances.

### III.

Accordingly, for the foregoing reasons, I would hold that the district court did not abuse its discretion in denying Rickert's postconviction petition as untimely. Rickert has waived the argument that his postconviction petition should be considered timely under the interests-of-justice exception in Minn.Stat. § 590.01, subd.

---

**5.** In *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976), this court stated that "a convicted defendant is entitled to at least one right of review by an appellate or postconviction court." However, *Knaffla* was referring to the statutory procedures for review of a criminal conviction, particularly under the postconviction review process in Minn. Stat. ch. 590, not to a constitutional guarantee of one review. In fact, *Knaffla* stated that

postconviction relief should be predicated on "compliance with the procedural requirements of" the postconviction statute, indicating that any right to review is subject to statutory limitations. *See id.* at 252, 243 N.W.2d at 741; *see also Deegan*, 711 N.W.2d at 95 n. 5 (stating that the *Knaffla* holding was not based on the Minnesota Constitution).

4(b). Furthermore, on the issue actually briefed and preserved for appeal, I would decline to recognize a new right under the Minnesota Constitution to one unlimited and absolute right of review of a criminal conviction. Minnesota's current system for reviewing criminal convictions through direct appeal and postconviction review is sufficient to satisfy the requirements of Article I, Section 7 of the Minnesota Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution

I therefore respectfully concur in the result.